WHITE et al. v. TEXAS MOTORCAR & SUPPLY CO. et al. (No. 5995.)

(Court of Civil Appeals of Texas. San Antonio. April 10, 1918. Rehearing Denied May 15, 1918.)

1. SEQUESTRATION 4 — JURISDICTION — QUASHING OF WRIT.

In an action for damages for refusal to deliver possession of automobiles plaintiff had stored in defendant's garage, a writ of sequestration, issued before petition was amended so as to sue for possession, was properly quashed; Rev. St. 1911, arts. 7094, 7095, specifying cases in which property will be sequestered, authorizing no writ in an action merely for damages.

2. SEQUESTRATION 12 — JURISDICTION — NATURE OF ACTION.

Since Rev. St. 1911, art. 7096, requires the filing of a petition before a writ of sequestration can issue, where the petition seeks damages alone and not possession, the nature of the action is to be determined thereby, and an averment in the affidavit that possession was sought does not confer jurisdiction to issue the writ, and amendment of petition after issuance of writ does not cure defect.

3. SEQUESTRATION 12—LANGUAGE OF AFFIDAVIT—COMPLIANCE WITH STATUTE.

The words, "will make use of its possession of said property to injure said property," in plaintiff's affidavit for writ of sequestration, were a substantial compliance with Rev. St. 1911, art. 7094, providing that the writ may issue where plaintiff fears that defendant "will injure such property."

4. APPEAL AND ERROR 1043(1) — SEQUESTRATION—HARMLESS ERROR.

Where the court properly quashed the writ of sequestration on the ground that there was no jurisdictional power to issue the writ, its ruling in erroneously sustaining exceptions to sufficiency of plaintiff's affidavit for writ was harmless.

**5. CORPORATIONS ⬦⟶617(5) — DISSOLUTION — JUDGMENT.**

After a corporation has been dissolved, no judgment can be entered against it, although suit may have been pending at the time of dissolution.

**6. CORPORATIONS ⬦⟶349—LIABILITY OF DIRECTORS—DISSOLUTION.**

Plaintiff, who claimed a corporation refused to deliver possession of automobiles stored in its garage, cannot, upon insolvency and dissolution of the corporation, recover against directors personally, where they owed nothing on stock subscriptions, and where as trustee after dissolution they had no property of the corporation in their hands, unless they negligently continued to hold automobiles after dissolution and then only for such depreciation as occurred after dissolution.

**7. LIVERY STABLE AND GARAGE KEEPERS ⬦⟶8(1)—GARAGE—LIEN FOR STORAGE.**

A garage owner has no lien on automobile for storage charges unless automobile was stored under contract with the owner thereof.

**8. BAILMENT ⬦⟶18(4)—AUTOMOBILE REPAIR WORK—SURRENDER OF PROPERTY — WAIVER OF LIEN.**

·A garage which voluntarily surrenders possession of an automobile on which repair work has been done loses its lien securing payment of amount due for repairs; and, where garage again comes into possession, it cannot hold car to protect itself against the nonpayment of such repair charges.

**9. LIVERY STABLE AND GARAGE KEEPERS ⬦⟶8(1)—GARAGE—LIENS—STORAGE CHARGES.**

Where a garage is sold and new owner continues to hold a car he knows is being wrongfully withheld from its owner, he cannot claim lien on such car for storage charges.

**10. BAILMENT ⬦⟶18(2) — CHANGE OF POSSESSION WITHOUT ASSIGNMENT OF LIEN.**

Where a garage is sold and the buyer, in taking possession of the garage, comes into possession of an automobile held by seller to protect a lien for repair charges, the buyer gets no right to the lien on such automobile, unless the lien claimed has been assigned to him by the seller.

**11. LIVERY STABLE AND GARAGE KEEPERS ⬦⟶8(1)—GARAGE—LIENS.**

Where a garage holding an automobile on which it claims a lien is sued by owner for possession, and replevies automobile after a writ of sequestration has been issued, the garage cannot claim a lien for storage for the time it held automobile after it had been replevied.

Appeal from District Court, Nueces County; Walter P. Napier, Special Judge.

Action by J. H. White against the Texas Motorcar & Supply Company, R. H. Welder, and J. J. Welder, in which W. A. Saunders filed a petition in intervention. From the judgment, plaintiff and intervener appeal. Affirmed in part, and in part reversed.

G. R. Scott and Boone & Pope, all of Corpus Christi, for appellants. Kleberg & Stayton, Russell Savage, and Dawson & Anderson, all of Corpus Christi, for appellees.

MOURSUND, J. J. H. White, on January 11, 1913, sued Texas Motorcar & Supply Company, a private corporation, alleging that on January 8, 1913, he had placed two automobiles, each of the value of $1,500, in defendant's garage for storage, and on January 9, 1913, when plaintiff demanded possession thereof, defendant refused to deliver possession thereof, alleging that it had an unpaid account against certain persons, and that it proposed to hold the automobiles until said account was paid; that said account was not made by plaintiff or authorized to be made by him, and plaintiff was not liable therefor; that plaintiff offered to pay and tendered to defendant the customary charges for repairs to said car and for storage thereof which accrued after it was stored with defendant on January 8th, as aforesaid; but defendant declined to accept said pay or to advise plaintiff of the amount thereof. Plaintiff in his petition made tender of such amount as is reasonable, proper, and customary charge for defendant's services with respect to the automobiles between the date he stored same and of the refusal of defendant to deliver same. Plaintiff also alleged:

"That by reason of the wrongful and unlawful holding of said property by defendant, and the conversion thereof as aforesaid, plaintiff has sustained damages in the sum of $20 per day on each of said cars, and will continue to sustain damages at the rate of $20 per day on each of said cars until same are delivered to plaintiff, and that by reason of the conversion of the said property, as hereinabove stated, plaintiff sustained damages in the sum of $3,000, the value of said cars."

The prayer was:

"Wherefore, plaintiff prays the court that defendant be cited to appear and answer this petition and for judgment in the sum of $3,000 for the value of said cars, and $20 per day on each of said cars from and inclusive of the 9th day of January, A. D. 1913, until the defendants shall deliver the possession of said cars to plaintiff, for interest at the rate of 6 per cent. on the amount so recovered from the date when same became due, and for costs of suit and for such other and further relief, special and general, in law and equity, that he may be justly entitled to, whether herein specifically prayed for or not."

On the day the suit was filed plaintiff made affidavit for writ of sequestration, alleging that he had filed suit for possession of the automobiles, and stating as ground for the writ:

"Petitioner fears the defendant the Texas Motorcar & Supply Company will make use of the possession of said property to injure said property, and will waste and convert to its own use the fruits and revenues produced by the same."

Sequestration bond was filed; the writ issued and served, and a replevin bond, executed by defendant as principal and R. H. Welder, R. B. McGloin, and D. Odem as sureties, was promptly given and returned with the writ. On August 21, 1915, plaintiff filed his first amended original petition, wherein he alleged that the automobiles were in good condition, and with due care would have remained fit for use for one year, and were earning a net revenue of $20 per day each, which was the fair and reasonable value of the use, hire, or rent thereof, and by reason of being deprived of said automobiles plaintiff suffered damages in the sum of $6,000. He

also alleged the proceedings with regard to the sequestration and replevy of the automobiles, and that they had depreciated in value to the extent of $1,450 each. He prayed for judgment for the possession of the automobiles, for his special damages against defendant and the sureties on the replevin bond, and in the event the automobiles could not be delivered, for judgment against defendant and the sureties for the value thereof and his special damages, interest and costs. On October 23, 1916, defendant filed an amended motion to quash the sequestration proceedings. On June 15, 1917, plaintiff filed a third amended original petition, making R. H. Welder, J. J. Welder, Jr., and W. A. Saunders parties. In addition to allegations previously made he averred that the Texas Motorcar & Supply Company, on May 4, 1915, filed its voluntary certificate of dissolution, at which time R. H. Welder and J. J. Welder, Jr., were sole directors, officials, and stockholders thereof; that R. H. Welder at that time was indebted to the corporation in the sum of $5,250, and J. J. Welder in the sum of $500, said amounts being due for stock subscribed for, except one share, which was owned by J. J. Welder; that at the time of its dissolution the corporation had assets of the value of more than $10,000 in excess of its liabilities, which were converted by R. H. Welder to his use and benefit; that said R. H. Welder and J. J. Welder, being sole stockholders and directors, upon the dissolution of the corporation became and were trustees for the creditors thereof, and as such trustees succeeded the corporation, and after its dissolution as individuals, unlawfully retained and held, and still unlawfully retain and hold, the possession of said automobiles, to plaintiff's damage as thereinbore set forth. He pleaded that Saunders was asserting a claim for storage on the cars and a lien to secure such claim; that in truth Saunders had no claim or lien, but if it should be held that he did have, then that same was incurred by Texas Motorcar & Supply Company and defendants R. H. and J. J. Welder, and plaintiff is not liable therefor, but if it should be held that Saunders has a claim against plaintiff or a lien on the automobiles, then that plaintiff have judgment over against the Welders for such amount as should be decreed to be paid by plaintiff established as a lien on the automobiles. Defendants Welder filed a motion to quash the sequestration proceedings on the same grounds urged by Texas Motorcar & Supply Company. Separate answers were filed, containing general and special exceptions, general denial, and special answers. R. H. Welder, however, pleaded that the corporation was indebted to him at the time it was dissolved. Saunders, by petition in intervention, claimed he had purchased the garage from one Wood, who in turn had purchased it from Texas Motorcar & Supply Company, and that he had acquired from Wood an unpaid account for storage of said automobiles, and had a similar account of his own. He asserted a lien thereon for such accounts, and alleged that the automobiles were not of value sufficient to pay his debt, and prayed for foreclosure and judgment against plaintiff and the Welders. The various parties filed supplemental pleadings. The court sustained the motions to quash the sequestration, and instructed the jury to return a verdict in favor of plaintiff against defendants Welder individually and as trustees of the Texas Motorcar & Supply Company, and the intervener, Saunders, for the possession of the automobiles, subject to the lien of Saunders for storage; also for Saunders in the sum of $200.00 with lien on the cars to secure the amount; also in favor of defendants Welder individually and as trustees against plaintiff and intervener on their claim for money judgment; also in favor of plaintiff against the claim of the intervener. The verdict was returned, and judgment entered in accordance therewith. Plaintiff and intervener, Saunders, perfected appeals, but Saunders abandoned his appeal, and filed briefs, replying to the brief of plaintiff.

[1, 2] It is contended that the court erred in quashing the writ of sequestration. At the time the writ was issued the suit was one for damages, and not for possession of personal property. Such a suit will not support a writ of sequestration. R. S. arts. 7094–7095; Houston v. Booth, 107 S. W. 887. The affidavit for the writ stated that the suit was for the automobiles, but as article 7096 provides that no writ of sequestration shall issue unless a petition shall have been first filed, if the suit is in the district or county court, it appears that such petition must determine the nature of the suit, and not the affidavit for the writ. As the suit was not one for the possession of property at the time the writ was issued, there was no jurisdictional power to issue the writ, and a subsequent amendment of the petition cannot aid the attachment proceedings. We conclude there was no error in quashing the sequestration proceedings.

[3, 4] We find ourselves unable to sustain the ruling of the court on the additional ground urged in appellees' second counter proposition, namely, that the language, "will make use of its possession of said property to injure said property," did not constitute a substantial compliance with the statute relating to sequestration of personal property, which uses the language, "will injure such property." As the court was correct in quashing the sequestration, he did not err in sustaining exceptions to the pleadings of plaintiff seeking to recover on the replevy bond.

The propositions urged under appellants' so-called third assignment of error raise the issues: First, whether the court erred in refusing to instruct a judgment against the corporation; second, whether it erred in instructing a verdict in favor of R. H. Welder and J. J. Welder.

[5] Appellant was not entitled to judgment against the corporation because it had been dissolved long prior to the trial. Receiver v. Stanton, 86 Tex. 620, 26 S. W. 615; Orange Lumber Co. v. Toole, 181 S. W. 825–826.

[6] It appears that long before the dissolution of the corporation the garage in which the automobiles were kept by it was sold to a man by the name of Wood. Wood sold out to intervener Saunders, and assigned to Saunders a bill for storage on the automobiles. Saunders had possession of them at the time of the trial, and asserted a claim of his own as well as the Wood claim, for storage thereof. The evidence failed to show that the Welders owed anything on stock subscriptions. The corporation was insolvent, and no property or assets thereof came into the hands of the Welders as trustees after its dissolution. The undisputed evidence disclosed that the automobiles belonged to plaintiff, and not to the corporation. True, his suit was one for conversion until some months after the dissolution of the corporation, but it cannot be held that he is the owner and at the same time that the corporation became the owner, and he became a creditor to the extent of the value of the property. If, as contended by appellant, the corporation wrongfully held the property under a contract of bailment at the time it was dissolved, and the directors negligently continued to hold the same, and therefore should be held liable for such depreciation as occurred after the dissolution, the evidence wholly fails to show to what extent depreciation took place after such dissolution. We are unable to see how a judgment could have been entered against the Welders upon any theory suggested in appellant's pleadings or propositions, and therefore conclude that the court did not err in peremptorily instructing a verdict in their favor. What we have said in this connection also disposes of the contentions made under the fourth assignment of error.

[7] The court erred in failing to sustain the exception urged to that part of intervener Saunders' pleading in which he alleged a lien on the automobiles. He did not allege any contract with plaintiff for the storage of the automobiles, such as would entitle him to a lien at common law. He had no statutory lien. Malcolm v. Sims-Thompson Motorcar Co., 164 S. W. 924. The cars were left in the garage when the corporation sold the same to Wood. He did not allege that the automobiles belonged to the corporation, or that it held the same under such circumstances as would entitle it to store the same with Wood and fasten a lien on them.

[8, 9] The facts proven were wholly insufficient to prove that Saunders had a lien. The corporation, if it had a lien thereon for repairs made while the automobiles were in possession of Harmon, waived it by giving him possession of the same. Ford Motor Co. v. Free-

man, 168 S. W. 80. The corporation unlawfully withheld the automobiles from White, and the evidence was sufficient to charge Wood and Saunders with notice of plaintiff's rights. They could not acquire a right to charge plaintiff's property with a lien under the circumstances. Jesse French Piano Co. v. Elliott, 166 S. W. 29; Ruling Case Law, vol. 3, p. 133.

[10] But even if the corporation had a lien for Harmon's debt, and the right to charge storage as long as it was required to hold the cars for the purpose of collecting its debt, it did not undertake to assign to Wood its claims and with them the right to hold the property, but undertook to leave the cars with Wood for storage or abandoned the same. In Jones on Liens (3d Ed.) in a note on page 983, we find the following:

"Where a bailee ends the bailment and places the bailed chattel in a storage warehouse, the warehouseman has no lien as against the real owner. Estey v. Dick, 41 Pa. Super. Ct. 610."

[11] It may also be doubted whether the corporation, if it had a lien for the Harmon debt, could claim a lien for storage after replevying the property. Although the replevy bond, under our decisions, fell with the quashal of the sequestration writ, the corporation did a thing unnecessary to protect its lien when it replevied the property. It could have asserted its rights and enforced same by suit on the original sequestration bond given by plaintiff, and it may well be doubted whether it could charge storage for such time as its holding of the property was not necessary to the protection and enforcement of a lien.

We are unable to see any theory upon which Wood and Saunders could claim a lien as against plaintiff. The corporation had no right to a lien, and Wood and Saunders, under the facts proved, are in no better position than that occupied by the corporation.

Saunders was not awarded any judgment against any one for the $200 adjudged to constitute his claim, but his lien to secure the payment thereof was established and foreclosed. All of that part of the judgment establishing his claim and lien and foreclosing the lien is reversed, and judgment rendered that he take nothing by his suit. All assignments of error except those relating to intervener are overruled, and the judgment in all respects affirmed, except as above indicated. Costs of appeal will be taxed against intervener Saunders.