CORSICANA TRANSIT CO. et al. v. WALTON. (No. 1616.)*

(Court of Civil Appeals of Texas. Texarkana. July 1, 1916. Rehearing Denied Oct. 19, 1916.)

1. DEATH ☞33 — ACTION—PARTIES LIABLE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4694, authorizing an action for wrongful death caused by the neglect of any carrier by the negligence of its servants or agents, an electric company not owning or operating a street railroad, though receiving the money collected by the transit company and applying it as a credit on the amount due to it for the rent of car barns, electric power, etc., but having a distinct corporate existence, was not liable for the death of one killed by the negligence of railroad's motorman.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 49; Dec. Dig. ☞33.]

2. CORPORATIONS ☞617(5) — DISSOLUTION — ABATEMENT OF ACTION.

Where a corporation was dissolved, the remedy was to abate an action against it, and not to direct a judgment on the merits in its favor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2454; Dec. Dig. ☞617(5).]

3. APPEAL AND ERROR ☞232(1)—QUESTIONS FOR REVIEW—NONEXISTENCE OF DEFENDANT CORPORATION.

A suggestion to the trial court that a defendant corporation was nonexistent may be considered as raising the question of the right of such corporation to prosecute an appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1368, 1430; Dec. Dig. ☞232(1).]

4. CORPORATIONS ☞617(5)—RIGHT TO APPEAL.

A corporation which had become nonexistent by its dissolution had no capacity to prosecute an appeal from a judgment against it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2454; Dec. Dig. ☞617(5).] •

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Action by W. W. Walton against the Corsicana Transit Company, the Corsicana Gas & Electric Company, and the Southern Traction Company. Judgment for plaintiff, and defendants appeal. Judgment against the Corsicana Gas & Electric Company reversed and rendered in its favor, appeal of Corsicana Transit Company dismissed, and judgment as to Southern Traction Company affirmed.

This is an action by the appellee for damages for the alleged wrongful death of his child two years old. The street car struck and killed the child at the street crossing of Third avenue in the city of Corsicana on January 31, 1913. The petition alleged that the Corsicana Transit Company owned the line of street railway and the street car, that the Corsicana Transit Company was a corporation legally organized under the laws of Texas and engaged in business in Corsicana in Navarro county, Tex., with its principal offices therein, and that the street car was being operated at the time of the accident by a motorman of the transit company. The petition further averred that the negligence was that of the Corsicana Transit Company, and also of the motorman in operating the car. But the petition has the further paragraph:

"10. Plaintiff further alleges that he is unable to tell exactly who owns the Corsicana Transit Company and the car in question, and who is the real employer of said motorman, but he is informed and believes, and therefore alleges, that all of said defendants are owned, dominated, and controlled by the same person or persons, and that they operate as a copartnership, and that while nominally they are being operated in the guise of corporate entities, yet they are but the subsidiaries of each other, and the Corsicana Transit Company is the agent of the other defendants herein, and is owned by them as their instrument in transacting their business, and that they are jointly liable for the acts complained of and damages sued for herein."

The petition then prays for judgment against the defendants jointly and severally for the damages sued for.

The Corsicana Gas & Electric Company pleaded in defense that it did not own nor operate the street railway or the car, and

was not liable for the injury. The Corsicana Transit Company appeared by answer and presented legal exception to the petition, a denial of any negligence, and a plea of contributory negligence on the part of the plaintiff. The answer was signed by attorneys and was sworn to by J. W. Carpenter as agent of the Corsicana Transit Company. There was a verdict in favor of appellee against both companies.

The evidence shows that the Corsicana Transit Company, a corporation, is engaged in the business of operating a street car system in Corsicana; and the Corsicana Gas & Electric Company, a corporation, is engaged in the business of manufacturing and supplying the public in Corsicana with electric lights and power. At the time of the injury complained of, and before that time, the stockholders and the directors of the Corsicana Transit Company and of the Corsicana Gas & Electric Company were the same persons, and J. W. Carpenter was president and manager of each company. Each of these corporations held separate stockholders' and directors' meetings and was managed by its own statements annually to the city, state, and federal governments. The Corsicana Transit Company exclusively owned the street railway and the cars, and never ceased operating the street railway; and the motorman in charge of the car was an employé of the Corsicana Transit Company. The Corsicana Gas & Electric Company furnished the Corsicana Transit Company the electric power with which to operate the street railway, and was paid for such power at the rate of 3½ cents per kilowatt. The Corsicana Transit Company was organized in the summer of 1903, and at that time its stockholders and directors were different persons from the stockholders and directors of the Corsicana Gas & Electric Company; and at the time of its organization the transit company arranged or agreed, for economy and convenience, with the gas and electric company to pay the gas and electric company, in addition to the amount paid for electric power, the sum of $100 per month for ground rent for the car barn and for clerical work in the superintendency of the company's affairs. This agreement continued until the Southern Traction Company took over the street railway property on February 1, 1913. The Corsicana Gas & Electric Company did not receive any profit or benefit besides the specified sum of $100 and the amount paid for electric current. The evidence respecting the dealings of the two companies with each other and how the business was conducted may be shown substantially, it is concluded, by quoting from the testimony of the witness Carpenter as follows:

"I was president and manager of the Corsicana Transit Company; and I also held the same positions with the Corsicana Gas & Electric Company. I held both positions in each of the corporations at the same time. The Cor-

sicana Gas & Electric Company furnished power to the Corsicana Transit Company, with which to run its cars, and the Corsicana Transit Company paid the Gas & Electric Company for that power. The Corsicana Transit Company employed me to operate and manage the Corsicana Transit Company, and the Corsicana Gas & Electric Company employed me to operate and manage its business. I was manager of the Corsicana Transit Company on the day of the accident, and was managing it on that day. As manager and president of the Corsicana Transit Company it was my business to look after its business in every way; hire employés; attend to its business in every respect. As manager and president of the Corsicana Gas & Electric Company, it was my duty to attend to the operation of its business in every respect. The two businesses, that is, the Corsicana Gas & Electric Company and the Corsicana Transit Company, were separate and distinct, and it just happened that I was president and manager of both concerns. When I employed employés for the Corsicana Transit Company, I was acting for the Corsicana Transit Company; and when I employed employés for the Corsicana Gas & Electric Company, I was acting for that concern. The fares on the street cars are placed in boxes on the cars, and those fares are collected daily, and when the money is collected off the cars it is taken to the office and placed in the safe. That money is placed to the credit of the Corsicana Transit Company. We make an entry in our books of the amount of money collected from the cars. The Corsicana Transit Company did not have books in which to keep a record of its business; that credit I just mentioned was made on the books of the Corsicana Gas & Electric Company. We show the collections from the cars of the Corsicana Transit Company in the books of the Corsicana Gas & Electric Company, but the money so collected is placed to the credit of the Corsicana Transit Company. In answer to your question as to why it was that we used the books of the Corsicana Gas & Electric Company, in which to enter the receipts of the Corsicana Transit Company, I will say that we did that simply because it was less trouble to transact the business that way than it was to have two distinct sets of books. We would collect the money from the cars of the Transit Company once a day, and on the books of the Gas & Electric Company we would make a notation as to how much was collected and credit it to the Corsicana Transit Company. We had one book that belonged to the Corsicana Transit Company, which was separate and distinct from the books of the Corsicana Gas & Electric Company, that was what was called the cash fare book. I sometimes used the employés of the Corsicana Gas & Electric Company to do work for the Transit Company, but when I did that the Transit Company would pay them for such work; the Transit Company would pay the Gas & Electric Company for that work. The Gas & Electric Company, in doing that work, or furnishing power, would be paid for that by the Transit Company, just like it was a third party. Some of the employés of the Transit Company were separate in their work from the employés of the Corsicana Gas & Electric Company. There was no employé who was the employé of both the Corsicana Gas & Electric Company and the Corsicana Transit Company at the same time."

The evidence warrants the findings of fact that the motorman in charge of the car was guilty of negligence in operating the street car as alleged, proximately causing the death of the child, and the evidence warrants the amount of the verdict. The Corsicana Transit Company was the owner of and was operating the street car and railway, and the

motorman causing the death was its employé. The Corsicana Gas & Electric Company was not the owner or hirer of, nor was it operating, the railway or car in copartnership or jointly with the Transit Company. The Corsicana Gas & Electric Company was by contract paid a fixed sum for ground rent for car barn and for superintendency of the financial and corporate affairs of the transit company, and received no profit nor pay besides said fixed sum as compensation and the pay for electric current.

McClellan & Prince and Woods & Kerr, all of Corsicana, for appellants. Richard Mays and Luther A. Johnson, both of Corsicana, for appellee.

LEVY, J. (after stating the facts as above). [1] The appellant Corsicana Gas & Electric Company predicates error upon the refusal of the court to peremptorily instruct, as requested, a verdict in its favor, because the evidence fails to show it to be liable under the statute for the death of the child. The petition fairly charged, as we interpret it, the two things: (1) That the Gas & Electric Company and the Transit Company were operating a street railway "as a copartnership," or jointly, and (2) that the Gas & Electric Company "owned" the street railway property. We concluded that the Corsicana Transit Company through its motorman was guilty of negligence proximately causing the death of the child. We have further concluded as applicable to the two things pleaded by appellee that, in point of fact as disclosed by the evidence, the Gas & Electric Company was a distinct existing corporation and did not own and was not operating the street railway or car by hire or as a partner with or jointly with the Corsicana Transit Company, a distinct and separate corporation. Giving legal effect to the facts so found, it is believed that the Corsicana Gas & Electric Company may not be held liable for the death of the child. Article 4694, Vernon's Sayles' Stat.; Lange v. Burke, 69 Ark. 85, 61 S. W. 165; White v. Land & Water Co., 18 Tex. Civ. App. 634, 45 S. W. 207; Lipscomb v. Ry. & Express Co., 95 Tex. 5, 64 S. W. 923, 55 L. R. A. 869, 93 Am. St. Rep. 804.

[2-4] The Corsicana Transit Company by its assignment of error insists that the court committed fundamental and prejudicial error in failing to peremptorily charge the jury to bring in a verdict in its favor, upon the ground that such company had been legally dissolved and was no longer in existence at the time of the suit. The transit company appeared and made answer to the merits of the suit, and evidence was offered in defense against its liability charged in the petition. And it appears there was evidence showing that on April 7, 1913, at a meeting of the stockholders and directors of the transit company, there was voluntary dissolution of the corporation. The stockholders of the corporation properly signed the resolution dissolving the corporation, and filed the same with the secretary of state, who issued a certificate of dissolution. It is believed it may not be said that there was error, as contended by appellant, in the precise assignment of error, on the part of the trial court in refusing to direct a verdict in its favor on the merits of the case, for judgment would have to be rendered on the verdict. The necessary legal effect of the dissolution is merely to abate the action against the corporation. 5 Thompson on Corp. (Ed. 1895) § 6723; 10 Cyc. p. 1316. If appellant was dissolved as a corporation the remedy was to abate the action, the same as the suggestion of death of a defendant would abate an action. And taking the proof as a suggestion to the trial court that the corporation was nonexistent, such suggestion may be considered as raising the question of the right of such corporation to prosecute an appeal. Being nonexistent as a corporation by dissolution, the dissolution terminates its existence, so that it has no capacity to prosecute an appeal. State v. Loan & Trust Co., 113 Iowa, 439, 85 N. W. 638. The corporation may only appeal from a judgment declaring a forfeiture of its charter. Railway Co. v. Jackson, 85 Tex. 605, 22 S. W. 1030.

The judgment against the Corsicana Gas & Electric Company is reversed and here rendered in its favor with costs, and the appeal by the Corsicana Transit Company is dismissed. The appellee and the sureties on the Corsicana Transit Company's bond will each pay one-half of the costs of appeal. The judgment as to the Southern Traction Company will remain undisturbed.